IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Booker T. C., | ) |
|       *Plaintiff*, | ) |
| | ) Case No. 3:23-cv-50091 |
| v. | ) |
| | ) Magistrate Judge Lisa A. Jensen |
| Martin O'Malley, | ) |
| Commissioner of Social Security | ) |
| | ) |
|       *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Booker T. C. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying his applications for disability insurance benefits and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

**I. Background**

On November 9, 2020, and August 24, 2021, Plaintiff filed applications for disability insurance benefits and supplemental security income, respectively. R. 86, 112. Plaintiff alleged a disability beginning on September 30, 2019, because of partial deafness, learning disabilities, and borderline diabetes. R. 86, 112, 258. Plaintiff was 40 years old on his alleged onset date. Plaintiff's date last insured was March 31, 2022. R. 16.

Following a hearing, an administrative law judge ("ALJ") issued a decision in April 2022, finding that Plaintiff was not disabled. R. 13–24. The ALJ found that Plaintiff had one severe impairment, namely a hearing impairment. The ALJ further found that Plaintiff's diabetes mellitus, hypertension, hyperlipidemia, liver steatosis, enlarged adenoids, constipation, Barrett's esophagus,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 8.

1

degenerative changes of the left foot, plantar fasciitis, obesity, and adjustment disorder were non-severe impairments. The ALJ also found that Plaintiff's alleged hand impairment, migraine headaches, and learning disability were non-medically determinable impairments. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: he should not work at unprotected heights or around moving dangerous machinery. He can work in any noise environment provided that communication is not required as part of the day-to-day operations. He will need to be in moderate noise or quieter environment for communication. He will need to have the ability to adjust volume for telephone communication and face to face communication to allow for reading of lips for in-person communication. He should operate equipment and use workplace tools that do not require the ability to hear audible timers, beepers, signals, and if these alarms are used [ ], they would need to be loud and with visual alert like a light. He should avoid work in tandem or teamwork oriented. He is able [to] accept unskilled instructions where the supervisor or the designee will teach the person the work tasks during the introductory period [ ] but only occasional interactions thereafter, subject to the noise limitations described above. He is able to understand, remember, and carry out simple work instructions. He is able to sustain the necessary attention and concentration in two-hour increments throughout the day to sustain simple job duties with typical workday breaks. He is able to deal with occasional changes in a routine work setting.

R. 18. The ALJ determined that Plaintiff is unable to perform his past relevant work, but that there were other jobs that existed in significant numbers in the national economy that he could perform, namely light and medium, unskilled jobs.

After the Appeals Council denied Plaintiff's request for review on February 6, 2023, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* When

2

reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, if there is substantial evidence supporting the ALJ's disability determination, the court "must affirm the decision even if reasonable minds could differ concerning whether [the claimant] is disabled." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (internal quotation marks and citation omitted).

### III. Discussion

Plaintiff makes three arguments challenging the ALJ's decision relating to his mental impairments. Plaintiff argues that the ALJ: (1) erred at step two in finding that Plaintiff had no severe mental impairments; (2) did not properly evaluate the consultative examiner's opinion; and (3) erred in assessing his RFC. The Court addresses each argument in turn.

A.  Step Two

3

Plaintiff first argues that the ALJ erred at step two by not finding his learning disability and adjustment disorder to be severe medically determinable impairments.[2]

At step two, the ALJ determines whether the claimant has a medically determinable impairment, and if so, whether that impairment or combination of impairments is severe. 20 C.F.R. § 404.1521. The regulations provide that a medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. "We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment." *Id.*

Here, at step two of the analysis, the ALJ considered Plaintiff's alleged learning disability but found that it was not a medically determinable impairment. R. 16. The ALJ explained that the record contained no documentation of clinical findings by an acceptable medical source establishing the existence of a learning disability. In support of his argument that the ALJ erred in making this determination, the only evidence Plaintiff points to is his primary care physician Dr. Brian Didier's opinion that his learning disability, depression, and anxiety impacted his ability to work. Pl.'s Mt. at 10, Dkt. 12-1 (citing R. 532). On February 9, 2022, Dr. Didier completed a medical source statement and opined that the limitations that would affect Plaintiff's ability to

---

[2] In his opening brief, Plaintiff also states that the ALJ's determination that his alleged migraine headaches are not a medically determinable impairment is not supported by substantial evidence. Pl.'s Mt. at 10, Dkt. 12-1. However, Plaintiff's single, conclusory sentence about his migraines provides no support for his argument. Accordingly, the Commissioner responds that Plaintiff has forfeited his argument regarding his migraines. Instead of responding to the Commissioner's forfeiture argument, Plaintiff relies on the arguments set out in his original brief. *See* Dkt. 19. Therefore, the Court deems Plaintiff's argument regarding his migraines forfeited. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[Plaintiffs'] failure to respond to [Defendant's] arguments leads us also to conclude that they have waived [that] argument."); *see also Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

4

work at a regular job on a sustained basis were: "Difficulty hearing, learning disability (per patient), depression and anxiety." R. 532. By stating that Plaintiff's learning disability was "per patient," Dr. Didier was merely repeating Plaintiff's subjective allegation that he had a learning disability. As the Commissioner points out, subjective allegations are insufficient to establish a medically determinable impairment. 20 C.F.R. § 404.1521. Plaintiff does not respond to the Commissioner's argument or otherwise cite to any "medically acceptable clinical and laboratory diagnostic techniques" establishing a learning disorder. 20 C.F.R. § 404.1521. Accordingly, Plaintiff has failed to show that the ALJ's determination that his alleged learning disability was not medically determinable is not supported by substantial evidence.

As it relates to Plaintiff's adjustment disorder, the ALJ found that it was a medically determinable impairment but that it was non-severe. R. 16. A severe impairment is one that for a period of a least 12 months "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1520(a)(4)(ii). An impairment is found not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling 85-28, 1985 WL 56856, at *3.

The ALJ found that the medical record did not establish that Plaintiff's adjustment disorder resulted in "lasting sequelae" or any work-related limitations. R. 16. In support of this determination, the ALJ found that Plaintiff did not seek any treatment for his mental health until February 2022 when he was prescribed medication for his reported social anxiety, Plaintiff attributed his anxiety in social settings to his hearing impairment, and Plaintiff's treatment notes did not show any cognitive deficits upon mental status evaluations. R. 16–17. Plaintiff does not dispute the ALJ's determination based on the treatment records the ALJ relied on. Plaintiff argues

5

only that the ALJ's step two determination is not supported by substantial evidence because the state agency reviewing psychologists found that Plaintiff suffered from a mental impairment, namely a neurodevelopmental disorder on initial review and attention deficit hyperactivity disorder on reconsideration, and the consultative examiner diagnosed Plaintiff with adjustment disorder.

As to the state agency psychologists' opinions, Plaintiff offers no support for how a determination that Plaintiff suffered from a neurodevelopmental disorder and attention deficit hyperactivity disorder undermines the ALJ's determination regarding the severity of his adjustment disorder at step two. Accordingly, Plaintiff has not shown any reversible error on this basis. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (stating that a plaintiff cannot demonstrate that an ALJ's decision is not supported by substantial evidence "without grappling with the evidence: [a claimant] must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record"); *Crespo*, 824 F.3d at 674 (finding perfunctory and undeveloped arguments forfeited).

As to the consultative examiner's opinion, Plaintiff argues that the ALJ's step two analysis is undermined by her failure to properly evaluate the opinion. However, for the reasons set forth below, Plaintiff has not shown that the ALJ's evaluation of the opinion is not supported by substantial evidence. Accordingly, Plaintiff has not met his burden to prove a severe mental impairment at step two. *See Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001) (stating that it is the claimant's burden to prove that an impairment is severe). For all the above reasons, the Court finds that Plaintiff has identified no error at step two of the ALJ's analysis that would require remand.

B. **Consultative Examiner's Opinion**

Plaintiff argues that the ALJ erred in evaluating consultative examiner Dr. Zhujun Jiang's opinion because the ALJ did not properly assess the supportability and consistency of the opinion as required. Plaintiff argues that because of this error, the ALJ failed to fully consider the severity of his mental impairments at step two and in the RFC determination.

Because Plaintiff's claim was filed after March 27, 2017, the ALJ was required to evaluate Dr. Jiang's opinion under the regulations set out in 20 C.F.R. § 404.1520c. Under these regulations, the ALJ evaluates the persuasiveness of all medical source opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors to be considered in evaluating how persuasive an ALJ finds a medical source's medical opinions, and as a result, an ALJ must discuss how she considered those factors. 20 C.F.R. § 404.1520c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022).

For a medical opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* For an opinion to be consistent, it must be, reductively, consistent with the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.*

Here, Dr, Jiang examined Plaintiff on January 25, 2021 and opined that:

7

> The mental status exam showed poor concentration. His auditory working memory and short-term memory were poor. His attention span and concentration appeared to be poor. The general fund of knowledge is estimated to be poor. During the interview, Mr. Cross seemed to have difficulties hearing and/or understanding conversational voices. His intellectual functioning is estimated to be poor without testing. His interactions in a professional setting seemed to be having difficulties in hearing and/or comprehending. Mr. Cross's difficulties in hearing and/or comprehending conversational voices, and possibly cognitive deficits, might impact his ability to do work-related activities, such as learning new skills, remembering protocols, understanding and following instructions, communicating with co-workers and customers, and working in a team with others.

R. 438. The ALJ analyzed Dr. Jiang's opinion as follows:

> The undersigned finds the opinion from Zhujun Jiang, Psy.D, the above-referenced consultative psychological examiner, somewhat persuasive. Dr. Jiang opined that the claimant's difficulties in hearing and/or comprehending conversational voices, and possibly cognitive deficits, could impact his ability to do work-related activities, such as learning new skills, remembering protocols, understanding and following instructions, communicating with co-workers and customers, and working in a team with others (Exhibit 5F). As stated above, Dr. Jiang's evaluation showed difficulties with cognitive tasks, interaction, and judgment skills; however, these deficits were secondary to the claimant's hearing difficulties. Therefore, while the undersigned finds the opined limitations persuasive, this evaluation does not support a severe mental impairment. Furthermore, to the extent that it purports a severe mental impairment, this opinion is not consistent with other medical evidence that shows generally normal mental status evaluations and no mental health treatment until February 2022 for social anxiety in the context of his hearing difficulties.

R. 21-22.

As to the consistency factor, Plaintiff contends that the ALJ erred by failing to discuss the consistency of Dr. Jiang's opinion with the state agency psychologists' opinions and the opinion of Dr. Didier. But the ALJ found Dr. Didier's opinion unpersuasive and the state agency opinions on Plaintiff's mental impairments unpersuasive because they were not consistent with the record, noting that Plaintiff first sought mental health treatment in February 2022, Plaintiff attributed his anxiety to his hearing impairment, and treatment notes revealed normal mental examinations despite a diagnosis of anxiety and depression. Thus, the question is not whether Dr. Jiang's

8

opinions are consistent with the state agency psychologists' or Dr. Didier's opinions specifically, but rather, whether Dr. Jiang's opinions are consistent with the medical record as a whole. *See, e.g.*, *Schubert G. v. O'Malley*, No. 21 CV 3393, 2024 WL 2292786, at *4 (N.D. Ill. May 21, 2024); *Gwendolyn P. v. Kijakazi*, No. 20 C 3339, 2021 WL 5204858, at *9 (N.D. Ill. Nov. 9, 2021) ("The regulations require the ALJ to assess how consistent an opinion is with the entire record as a whole, not only with another opinion.") (citing 20 C.F.R. § 404.1520c(c)(2)). Here, the ALJ assessed the consistency of Dr. Jiang's opinion and concluded that it was "not consistent with other medical evidence that shows generally normal mental status evaluations and no mental health treatment until February 2022 for social anxiety in the context of his hearing difficulties." R. 22; *see also* R. 17 (citing R. 357, 406, 417, 436, 459, 480, 485, 515-16). As stated above, Plaintiff makes no attempt to dispute the ALJ's determination based on the treatment records the ALJ relied on.

As to the supportability factor, the ALJ acknowledged that Dr. Jiang's evaluation showed that Plaintiff had difficulty with cognitive tasks, interaction, and judgment skills. R. 21; *see also* R. 17–18, 21. But because Dr. Jiang explained that Plaintiff's difficulties resulted from his hearing impairment "and *possibly* cognitive deficits," the ALJ found that Plaintiff's deficits were secondary to his hearing difficulties. R. 21, 438 (emphasis added). Plaintiff himself reported that his difficulties in understanding, following instructions, and getting along with others was due to his hearing impairment. R. 19 (citing R. 265–72, 300–08). Accordingly, Plaintiff has not shown that the ALJ erred in her analysis of Dr. Jiang's opinion.

But even if the ALJ found Dr. Jiang's opinion more persuasive on remand, it would not result in the ALJ assessing a more restrictive RFC. As further explained below, despite finding that Plaintiff did not suffer from a severe mental impairment, the ALJ found the limitations assessed by Dr. Jiang and the state agency psychologists persuasive and adopted them in the RFC.

9

Therefore, even if the ALJ had not attributed Plaintiff's limitations as being secondary to his hearing impairment, the RFC accounted for the limitations reasonably supported by the record.

**C. RFC**

Lastly, Plaintiff argues that the ALJ failed to fully account for limitations relating to his mental impairments in the RFC.

A claimant's RFC is the maximum work that he can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 404.1545(a)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *5. "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

Here, Plaintiff argues that because the ALJ rejected the portion of Dr. Jiang and the state agency psychologists' opinions that Plaintiff suffered from a severe mental impairment and attributed their opined limitations to his hearing impairment, the ALJ improperly relied on her own lay opinion to determine that the RFC limitations adequately accounted for Plaintiff's mental limitations.

In support of this argument, Plaintiff relies on *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011), to argue that an ALJ cannot rely on her own lay opinion to formulate an RFC without a proper medical basis. *See* Pl.'s Mt. at 14, Dkt. 12-1. But in *Norris*, the ALJ rejected opinions from the plaintiff's primary care physician and the state agency physicians regarding the plaintiff's RFC and constructed an RFC without explaining what medical evidence she relied on

10

to support the RFC findings. Here, although the ALJ disagreed with Dr. Jiang and the state agency psychologists' opinions that Plaintiff suffered from a severe mental impairment, the ALJ still found their "opined limitations persuasive." R. 22. Accordingly, the ALJ relied on these opinions when formulating the RFC, as opposed to her lay opinion as Plaintiff suggests.

Plaintiff also argues that the RFC does not fully account for all the limitations included in the opinions of Dr. Jiang and the state agency psychologists because it does not account for Plaintiff's moderate limitation in his ability complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. As Plaintiff points out, the state agency psychologists at the initial and reconsideration level reviewed the medical record, including Dr. Jiang's opinion, and concluded that Plaintiff was moderately limited in his ability to complete a normal workday/workweek and perform at a consistent pace. R. 96, 109. The ALJ found these opined limitations persuasive. What Plaintiff overlooks is that the state agency psychologists provided a narrative explanation of the restrictions that would be necessary to address Plaintiff's moderate limitations in concentration and pace. In the narrative portion of the state agency psychologists' opinions, they explain as follows:

> The clmt retains the mental capacity to understand, remember and concentrate sufficiently in order to carry out one or two- step instructions for a normal work period. The clmt could make simple work related decisions. The clmt could interact with others sufficiently in a work setting with reduced social demands. He would do best in a predictable, routine work setting where employment related social interactions are infrequent, brief and largely task-specific (vs collaborative).

R. 98, 109–10.

Despite discounting a portion of the state agency psychologists' opinions, the ALJ adopted the above limitations in Plaintiff's RFC by restricting Plaintiff to simple, unskilled work instructions, simple job duties, occasional interaction with others after initial work instruction, no

11

tandem tasks or teamwork, and only occasional changes in a routine work setting. R. 18. Although the ALJ did not include a limitation for 1 to 2 step instructions, the ALJ's failure to include this limitation is harmless because one of the jobs the ALJ identified, cleaner/housekeeping (DOT 323.687-014) with 193,895 jobs available in the national economy, meets this requirement.[3] R. 24. *See Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) ("An error is harmless if, upon examination of the record, the court can 'predict with great confidence what the result of remand will be.'") (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)). Plaintiff has not identified any further limitations that would have been necessary to account for symptoms related to his mental impairments that should have been included in the RFC. Accordingly, a remand is not warranted on this basis.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Date: August 9, 2024         By:  /s/ Lisa A. Jensen
                                  Lisa A. Jensen
                                  United States Magistrate Judge

---

[3] The cleaner/housekeeping (DOT 323.687-014) position has an assigned reasoning level of 1, which the Dictionary of Occupation Titles ("DOT") defines as the ability to "carry out simple one- or two-step instructions." DOT, Appendix C § III, 1991 WL 688702 (4th ed. 1991).